UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICHOLAS LOVELL,

                                   Plaintiff,

                                                                      DECISION AND ORDER

                                                                      13-CV-6352L

                    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

                                 Defendant.
_____

**INTRODUCTION**

Plaintiff Nicholas Adam Lovell ("plaintiff") appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On December 19, 2008 plaintiff, then twenty-nine years old, filed an application for Supplemental Security Income benefits under Title II of the Social Security Act. Plaintiff alleged an inability to work beginning September 1, 2007. His application was initially denied. Plaintiff requested a hearing, which was held on June 4, 2010 before Administrative Law Judge ("ALJ") Edward I. Pitts. ALJ Pitts issued a decision on July 20, 2010, concluding that plaintiff was not disabled under the Social Security Act. (T. 36-60). Plaintiff appealed, and on March 30, 2012, the Appeals Council vacated the decision and remanded the matter for further proceedings,

including the obtainment of additional evidence concerning the vocational rehabilitation services provided to plaintiff and the obtainment of evidence from a vocational expert. A supplemental hearing was held on July 3, 2012. (T. 61-107). On July 6, 2012, ALJ Pitts issued a decision concluding that plaintiff was not disabled under the Social Security Act. (T. 12-23). That decision became the final decision of the Commissioner when the Appeals Council denied review on May 23, 2013. (T. 1-7).

Plaintiff has moved (Dkt. #14), and the Commissioner has cross moved (Dkt. #16) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the Commissioner's decision is affirmed.

## DISCUSSION

### I.   Standard for Determining Disability

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires an ALJ to follow a five-step sequential evaluation. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must ascertain whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. §§ 404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits him to perform the requirements of his past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)). *See* 20 C.F.R. § 404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence has been described as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its

weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)).  Still, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

ALJ Pitts' decision recites detailed findings of fact and articulates the bases upon which they rest.  Upon careful review of the complete record, I believe that the ALJ applied the correct legal standards and that his finding that plaintiff is not totally disabled is supported by substantial evidence.

The ALJ summarized plaintiff's medical records, noting his morbid obesity, degenerative disc disease of the lumbar spine, and bipolar disorder.  The ALJ determined that these conditions together constituted a severe impairment, but concluded that plaintiff, then a twenty-nine-year-old man with a high school education, was not totally disabled, due to his finding at step five that several positions existed in the economy that plaintiff could perform, including, cleaner-housekeeper, laundry worker, and ironer.  (T.22).

**II.   The ALJ's Decision**

At step one, the ALJ found that although plaintiff worked after December 19, 2008, the application date, such work activity did not rise to the level of substantial gainful activity.  (T. 14).  Next, the ALJ concluded that plaintiff has the following severe impairments: morbid obesity, degenerative disc disease of the lumbar spine, and bipolar disorder.  (T. 15 (citing 20 C.F.R. 416.920)(c))).  The ALJ found that the record lacked sufficient evidence to show that

4

plaintiff's other medical conditions—hypertension, thyroid disorder, and pilonidal (tailbone) cysts—arose to the level of a severe impairment because these conditions did not limit plaintiff's ability to engage in basic work activities.  At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 16 (citing 20 C.F.R. §§ 416.920(d), 416.925 and 416.926)).  Subsequently, the ALJ concluded that plaintiff has the RFC to perform light work and the capability to perform all the essential aspects of unskilled, routine work.  (T. 18).  The ALJ also determined that although plaintiff is capable of frequent contact with co-workers and only occasional contact with supervisors and the general public, and that plaintiff should have no supervisory duties and should not work in a production or fast-paced situation, due to difficulties with stress.  (T. 18).  At step four, the ALJ found that plaintiff is unable to perform any past relevant work.  (T. 21).  Finally, upon consideration of plaintiff's age, education, work experience, and RFC, the ALJ concluded that plaintiff can perform several positions existing in the national economy, including cleaner-housekeeper, laundry worker, and ironer.  (T. 21-22).

### III. The ALJ Properly Determined Plaintiff's RFC

#### A. *The ALJ's Findings are Supported by Substantial Evidence*

The ALJ's finding that plaintiff retains the RFC to perform light work is supported by substantial evidence.  The record reveals that plaintiff's morbid obesity, degenerative disc disease of the lumbar spine, and bipolar disorder did not preclude him from performing light work as defined in 20 C.F.R. § 416.967(b).

In determining plaintiff's RFC, the ALJ considered the medical record, giving great weight to the opinion of internist Dr. Look Persaud, M.D., who upon physical examination of plaintiff, concluded that plaintiff has no physical functional limitations. (T. 394). Specifically, Dr. Persaud reported that plaintiff bore no restrictions relating to, *inter alia*, sitting, standing, walking, lifting, carrying, pushing, and pulling. (T. 394). Based on this evidence, the ALJ concluded that plaintiff retained the RFC to perform the substantial requirements of light work, including lifting and/or carrying twenty pounds occasionally and ten pounds frequently, and sitting, standing and/or walking for six hours, in an eight-hour workday. (T. 18).

In assessing plaintiff's psychological conditions, the ALJ explicitly applied what is generally referred to as the "special technique," prescribed for the evaluation of non-exertional impairments in adults at steps two and three of the ALJ's analysis. The special technique requires an ALJ to assess four categories of functionality: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Impairment in the first three categories must be ranked as none, mild, moderate, marked or extreme, and the number of episodes of decomposition must be ranked as none, one, two, or "three or more." The ALJ must document his analysis of the process to "reflect application of the technique, and…must include a specific finding as to the degree of limitation in each of the functional areas." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (internal quotations omitted). A finding of "mild" or less in the first three categories, coupled with a finding of "none" in the final category and the absence of contrary evidence, directs the conclusion that a claimant's mental impairment is *not* severe. 20 C.F.R. § 404.1520a(d)(1). If the finding indicates a greater degree of limitation, the claimant will be

deemed to have a severe mental impairment, and if that impairment neither meets nor equals a listed impairment, the ALJ will proceed to determine the claimant's RFC with regard to non-exertional limitations. 20 C.F.R. § 404.1520a(d)(3). Upon careful review of the complete record, I believe the evidence establishes that plaintiff does not satisfy the "paragraph B" criteria and thus, the ALJ properly concluded that plaintiff did not satisfy a listing.

As to concentration, persistence, or pace, the record supports the ALJ's conclusion that plaintiff had mild difficulties. A May 23, 2008 report indicated that plaintiff's ability to maintain attention and concentration were satisfactory. (T. 649). Treating psychologist Dr. Richard Lucas, Ph. D., opined that plaintiff was ready to begin employment and noted that plaintiff "believed he's now ready" for full-time employment. (T. 651). The ALJ noted that a February 18, 2009 mental status examination found plaintiff's attention, concentration, and memory skills "intact." (T. 399). Psychological consultant Dr. Helen Collins, Ph. D., opined that plaintiff "would be able to follow and understand simple directions and instructions and perform simple tasks independently." (T. 399-400). After reviewing the examination results, psychological consultant Dr. R. Nobel determined plaintiff had no marked limitations in concentration and persistence and indicated that plaintiff "is able to understand, remember and follow simple directions and sustain a routine and maintain adequate pace." (T. 422-24). Finally, in a March 18, 2010 report, plaintiff's treating psychiatrist Dr. Akintayo Akinlawon opined that plaintiff had no restrictions in understanding, remembering, and carrying out simple instructions and only moderate difficulties with complex instructions. (T. 533-34).

As to social functioning, the record supports the ALJ's finding that plaintiff had moderate difficulties. As the ALJ noted, the longitudinal medical evidence in the record shows that

plaintiff interacted appropriately with medical personnel during examinations. *See e.g.*, T. 398 (February 18, 2009 psychiatric evaluation by Dr. Collins: "claimant was cooperative and related adequately with examiner"). A mental status examination indicated that plaintiff's family relationships are "satisfactory." (T. 399). Dr. Akinlawon found that plaintiff had moderate difficulties interacting with the public and with supervisors. (T. 535). Dr. Nobel also concluded that plaintiff had moderate difficulties in social functioning. (T. 418).

As this evidence consistently indicates that plaintiff had no more than mild difficulties in concentration, persistence or pace, and no more than moderate difficulties in social functioning, the ALJ properly concluded that plaintiff's mental impairments did not meet or equal a listed impairment.

Based upon this substantial evidence, the ALJ proceeded to step four of the analysis, the determination of plaintiff's RFC, and upon consideration of plaintiff's treatment records, accurately concluded that plaintiff had no significant limitations on his ability to understand and carry out simple instructions, sustain a routine, and maintain an adequate pace. (T. 18-19). Accordingly, the ALJ's finding that plaintiff had the RFC to perform a range of light work is supported by substantial evidence in the record.

### *B. The ALJ Did Not Violate the Treating Physician Rule*

Plaintiff argues that the ALJ erred by not affording controlling weight to the opinion of his treating physician, Dr. Cilip. A treating physician's opinion will be controlling if it is "well-supported by medically acceptable [evidence] and is not inconsistent with other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship with the claimant; (2) the extent of the treatment relationship; (3) whether there is

medical support for the opinion; (4) consistency of the opinion with other evidence of the record; and (5) the physician's specialization, along with any other relevant factors.  20 C.F.R. § 404.1527(d)(2).

While the ALJ declined to afford controlling weight to the RFC assessment of plaintiff's primary treating physician, Dr. Cilip, the ALJ articulated sound reasons for doing so. Specifically, the ALJ considered Dr. Cilip's examining relationship with plaintiff and found that Dr. Cilip neither conducted a mental status or psychological examination of plaintiff, nor reviewed the psychological reports administered by plaintiff's treating psychologists Dr. Lucas and Dr. Akinlawon.  (T.20-21).

The ALJ also noted that Dr. Cilip is not a psychological specialist and that his opinion is contradicted by the medical evidence in the record.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the medical opinion of a claimant's treating physician will not be deemed controlling when it conflicts with other substantial evidence in the record).

Contrary to most cases, here, plaintiff had several treating physicians, including Dr. Cilip, Dr. Akinlawon, and Dr. Lucas.  Notably, most of plaintiff's treating physicians, namely psychological specialists Dr. Akinlawon and Dr. Lucas, concluded that plaintiff is *not* totally disabled.  As previously mentioned, unlike Dr. Cilip, both Dr. Akinlawon and Dr. Lucas conducted a mental status and psychological examination of plaintiff, and based their conclusion that plaintiff is not totally disabled on such findings.  As such, Dr. Cilip's opinion that plaintiff is completely disabled is inconsistent with substantial evidence in the record.  While Dr. Cilip opined that plaintiff had marked difficulties in his ability to, *inter alia*, maintain attention and concentration, perform activities within a work schedule, and respond appropriately to changes

in the work setting, his determinations are inconsistent with the medical records of plaintiff's treating psychological specialists Dr. Lucas and Dr. Akinlawon. For example, in a May 23, 2008 mental RFC assessment, Dr. Lucas reported that plaintiff's ability to respond appropriately to changes in a routine work setting and perform at a consistent pace is satisfactory, and that plaintiff's ability to maintain attention and concentration and follow work rules is more than satisfactory. (T. 422-23). Accordingly, the findings of Dr. Akinlawon and Dr. Lucas undermine plaintiff's contention and Dr. Cilip's opinion that plaintiff is totally disabled.

Further, the opinions of psychological consultants Dr. Collins and Dr. Nobel support the ALJ's finding that the opinion of Dr. Cilip is inconsistent with the medical records and clinical findings of psychological specialists. *See e.g.*, T. 422-23 (Mar. 18, 2009 records by Dr. Nobel: plaintiff's ability to perform activities within a schedule, sustain an ordinary routine, and respond appropriately to changes in the work setting are only moderately limited). In sum, because substantial evidence in the record indicates that plaintiff is not totally disabled, the ALJ properly declined to afford Dr. Cilip's divergent opinion controlling weight.

Plaintiff also argues that the ALJ erred in rejecting the opinion of plaintiff's treating nurse practitioner, who opined that plaintiff had marked difficulties in, *inter alia*, performing activities within a schedule. (T. 536-38). While the opinions of nurse practitioners may be considered as to the severity of plaintiff's impairment and how it affects his ability to work, such opinions do not warrant the same deference as those of treating physicians. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) ("the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician"). Moreover, the nurse practitioner's

opinion of plaintiff's RFC is inconsistent with the longitudinal medical evidence in the record. As such, the ALJ did not err by rejecting the nurse practitioner's opinion.

### IV.     The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. The ALJ may "discount plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and [claimant's] own activities during the relevant period." *Wischoff v. Astrue*, No. 08-CV-6367, 2010 U.S. Dist. LEXIS 37961, at *17 (W.D.N.Y. Apr. 16, 2010) (quoting *Ruggireo v. Astrue*, No. 5:05-CV-1179, 2008 U.S. Dist. LEXIS 76702, at *33 (N.D.N.Y. Sept. 30, 2008)). Having reviewed the record, I find there is substantial evidence to support the ALJ's finding that plaintiff's subjective reports of disabling pain are not credible.

Plaintiff's statements as to the intensity and limiting effects of his symptoms are inconsistent with medical evidence in the record. Taken together, plaintiff's treatment records do not suggest that plaintiff cannot perform the physical demands of light work, or the basic mental demands of work (ability to understand, carry out and remember simple instructions, and respond appropriately to changes to a routine work setting). As the ALJ noted, plaintiff's particularly conservative medical treatment for both his back condition and psychological disorder indicates that plaintiff is not as restricted as he claims. At the July 3, 2012 hearing, plaintiff testified he currently works part-time. Plaintiff also conceded that he discontinued weight treatment, is not seeing any specialist for his back, and is not seeking any special mental health treatment. (T. 68-69). Plaintiff's activities of daily living, including his capacity to work ten to fifteen hours a week moving lawns and attempting daily four-mile walks with his dog (T. 52), further indicate plaintiff's limitations are not as dramatic as he alleges. Additionally,

vocational rehabilitation reports show plaintiff was seeking a job at a light to medium exertional level, which the ALJ properly determined suggests plaintiff felt he was capable of working at that level.  As such, the ALJ did not abuse its discretion in determining that plaintiff's testimony was not entirely credible.

I have considered the rest of plaintiff's arguments and find them to be without merit.  I therefore find no reason to modify the ALJ's decision.

## CONCLUSION

The Commissioner's cross motion for judgment on the pleadings (Dkt. #16) is granted and plaintiff's motion for judgment on the pleadings (Dkt. #14) is denied.  The Commissioner's decision that plaintiff, Nicholas Adam Lovell, was not disabled is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      October 7, 2015